**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**MANHATTAN DIVISION**

**CASE NO.: 1:26-cv-02282**

ZURU IP LIMITED,

Plaintiff,

v.

CLICK PRODUCTS LLC, DUOCAI USA INC., MY SALES LLC, and HUBEI PENGCHENG TECHNOLOGY FACTORY,

Defendants.

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, ZURU IP LIMITED ("Plaintiff" or "ZURU"), by and through its undersigned counsel, brings this Complaint against Defendants, CLICK PRODUCTS LLC, DUOCAI USA INC., MY SALES LLC, and HUBEI PENGCHENG TECHNOLOGY FACTORY, (collectively, "Defendants"), who are promoting, selling, offering for sale and distributing goods bearing or using counterfeits and infringements and confusingly similar imitations of Plaintiff's intellectual property within this district, and in support of its claims, alleges as follows:

## SUMMARY OF THE ACTION

1. Plaintiff ZURU, brings this action for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, and 1125(a), The All Writs Act, 28 U.S.C. § 1651(a), and New York General Business Law.

2. Plaintiff, ZURU, brings this action for willful copyright infringement and piracy committed for purposes of commercial advantage or private financial gain by the reproduction or distribution, including by electronic means, of one or more copies of the copyrighted work in violation of 17 U.S.C. § 501, and for all the remedies available under the Copyright Act 17 U.S.C. § 101, *et seq.*, , and The All Writs Act, 28 U.S.C. § 1651(a).

**SUBJECT MATTER JURISDICTION**

3. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.

4. This Court also has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 17 U.S.C. § 501.

5. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

**PERSONAL JURISDICTION AND VENUE**

6. Defendants are subject to personal jurisdiction in this district because they purposefully direct their activities toward and conduct business with consumers throughout the United States, including within the state of New York and this district, through the URL https://www.pfa.com/ ("Website").

7. Defendants are subject to personal jurisdiction in this district because their illegal activities directed towards the state of New York cause Plaintiff injury in New York, and Plaintiff's claims arise out of those activities.

8. Venue is proper in this district under 28 U.S.C. §§ 1391(b) and (c) and 1400(a) because the events giving rise to the claims occurred in this district, Defendants engaged in infringement in this district, and Defendants are subject to personal jurisdiction in this district.

**THE PLAINTIFF**

9. Plaintiff ZURU IP LIMITED is a corporation incorporated under the laws of Hong Kong SAR and a Hong Kong registered company with offices in Kowloon, Hong Kong.

10. Plaintiff ZURU IP LIMITED is the owner of all rights in and to the trademarks and copyright described below that are the subject of this action.

11. ZURU is a disruptive and award-winning company that designs, manufactures and markets innovative toys and consumer products. Inspired by kids and imaginative play, ZURU is one of the fastest growing toy companies in the world and is known for their agility, creativity, and new-age manufacturing techniques. ZURU distributes to all major retailers in over 120 countries and has delighted millions of families all over the world with its extensive brand portfolio and partnerships with entertainment properties, including Nickelodeon, Disney, Universal Studios and Dream Works.

12. ZURU's products are sold through Amazon.com, Walmart.com, Target.com, Costco.com, Lowes.com, and other authorized retailers.

13. Plaintiff offers for sale and sells its products within the state of New York, including this district, and throughout the United States.

14. Like many other intellectual property rights owners, Plaintiff suffers ongoing daily and sustained violations of its intellectual property rights at the hands of counterfeiters and infringers, such as Defendants herein.

15. Plaintiff is harmed, the consuming public is duped and confused, and the Defendants earn substantial profits in connection with the infringing conduct.

16. In order to combat the harm caused by the combined actions of Defendants and others engaging in similar infringing conduct, Plaintiff expends significant resources in

connection with its intellectual property enforcement efforts, including legal fees and investigative fees.

17. The persistent rise in infringement on the Internet has created an environment that requires companies like Plaintiff to expend significant time and money across a wide spectrum of efforts in order to protect both consumers and itself from the ill effects of infringement of Plaintiff's intellectual property rights, including consumer confusion and the erosion of Plaintiff's brand.

## PLAINTIFF'S TRADEMARK RIGHTS

18. ZURU has earned an international reputation for quality, reliability and value, and is credited for many breakthroughs that have occurred in the toy industry.

19. ZURU is the owner and official source of BUNCH O BALLOONS-branded products in the United States.

20. BUNCH O BALLOONS are innovative, self-tying water balloons designed to simplify and speed up the process of filling and tying balloons for parties and water fights. BUNCH O BALLOONS are sold under several federally registered trademarks including:BUNCH O BALLOONS, BUNCHO, FILL & TIE 100 WATER BALLOONS IN 60 SECONDS, and SELF-SEALING WATER BALLOONS (collectively, the "BoB Marks").

21. Plaintiff is the owner of all rights in and to the BoB Marks shown in the table below, including the exclusive right to pursue acts of infringement worldwide and retain and recover all proceeds thereof, pursuant to a written agreement dated January 1, 2025, with non-party ZURU (Singapore) PTE, Ltd. The trademark assignment was subsequently recorded with the United States Patent and Trademark Office on September 30, 2025. Attached hereto as **Composite Exhibit 1**, are true and accurate copies of the trademark registration.

| **Mark** | **U.S. Reg. No.** | **IC** | **First Use/ First Use in Commerce** | **Registration Date** | **Exhibit** |
|---|---|---|---|---|---|
| BUNCH O BALLOONS | 4709630 | 28 | 8/30/2014 | 3/24/2015 | 1A |
| BUNCHO | 6086014 | 28 | 8/30/2014 | 6/23/2020 | 1B |
| FILL & TIE 100 WATER BALLOONS IN 60 SECONDS | 4928737 | 28 | 1/15/2015 | 3/29/2016 | 1C |
| SELF-SEALING WATER BALLOONS | 7291127 | 28 | 5/7/2015 | 1/23/2024 | 1D |

22. The BUNCH O BALLOONS, BUNCHO, and FILL & TIE 100 WATER BALLOONS IN 60 SECONDS Marks are valid and registered in International Class 28 for "water balloons" and "toys, namely, collectible toy figures in the nature of plastic character toys and plush toys; toy models; toy figures; molded plastic toy figurines in the nature of toy animal figurines; character toys, namely, fantasy character toys and plastic character toy monsters; toy vehicles; outfits for toys, namely, articles of clothing for toys; collector cases for toys, namely, cases for action figures; clothes for toys, namely, articles of clothing for toys; glasses for toys, namely, articles of clothing for toys; toy furniture; toy food, namely, modeled plastic toy figurines; toy weapons in the nature of toy guns and toy pistol; Games, namely, board games, card games, and arcade games; Playthings, namely, toy scooters and bean bag toy animals; toys comprising and including fluid fillable containers, namely, balloons; amusements and novelties, namely, paper party favors and fake teeth; play equipment, namely, jungle gyms, and toy action figures and accessories therefor; play sets for action figures", on the Principal Register of the United States Patent and Trademark Office.

23. The SELF-SEALING WATER BALLOONS Mark is valid and registered in International Class 28 for "Water balloons; toy weapons in the nature of toy guns and toy pistols;

water toys, namely, water guns and blasters; toys launchers in the nature of balloons launchers, target launchers for skeet shooting and toy slingshots; toys comprising and including fluid fillable containers, namely, balloons; slides and water slides," on the Supplemental Register of the United States Patent and Trademark Office.

24. The BUNCH O BALLOONS, BUNCHO, and FILL & TIE 100 WATER BALLOONS IN 60 SECONDS Marks are incontestable.

25. The BoB Marks are used in connection with the manufacture and distribution of Plaintiff's high-quality and unique water balloons.

26. The BoB Marks are displayed on different sides of the colorful and original packaging used for selling the products. Shown below are the BoB Marks, as they are used on the packaging for Plaintiff's products.










27. The BoB Marks have been used in interstate commerce to identify and distinguish Plaintiff's high-quality and unique water balloon products for an extended period of time.

28. The BoB Marks have been used by Plaintiff for a long time prior to Defendants' use of copies of those trademarks.

29. The BoB Marks have never been assigned or licensed to any of the Defendants.

30. The BoB Marks are a symbol of Plaintiff's quality goods, reputation and goodwill and have never been abandoned.

31. Plaintiff has carefully monitored and policed the use of the BoB Marks.

32. The BoB Marks are well known and famous (as that term is used in 15 U.S.C. § 1125(c)(1)) and have been for many years.

33. Plaintiff has expended substantial time, money and other resources developing, advertising and otherwise promoting the BoB Marks and the water balloons bearing or using those Marks.

34. Plaintiff has extensively used, advertised, and promoted the BoB Marks in the United States in association with the sale of high-quality and unique water balloons.

35. Plaintiff has spent substantial resources promoting the BoB Marks and water balloons bearing or using the BoB Marks.

36. In recent years, sales of products bearing or using the BoB Marks have exceeded a million dollars within the United States.

37. As a result of Plaintiff's efforts, members of the consuming public readily identify merchandise bearing or sold under the BoB Marks as being high-quality and unique water balloons sponsored and approved by Plaintiff.

38. Accordingly, the BoB Marks have achieved secondary meaning as identifiers of high-quality and unique water balloons.

39. Genuine water balloons bearing or sold under the BoB Marks are widely legitimately advertised and promoted by Plaintiff, its authorized distributors, and unrelated third parties via the Internet.

40. Visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing has become increasingly important to Plaintiff's overall marketing and consumer education efforts.

41. Thus, Plaintiff expends significant monetary resources on Internet marketing and consumer education, including search engine optimization ("SEO") strategies.

42. Plaintiff's SEO strategies allow Plaintiff and its authorized retailers to fairly and legitimately educate consumers about the value associated with Plaintiff's products and the goods marked with the BoB Marks.

## PLAINTIFF'S COPYRIGHT RIGHTS

43. Plaintiff is the owner of all rights in and to the copyrights in the 2-D artwork used on the packaging for the BUNCH O BALLOONS-branded products.

44. In 2015, non-party Shenzhen Yuhe Weiye Shiye LTD created the 2-D artwork shown below entitled "Bunch O Balloons Water Packaging A," (the "BoB Packaging"), under an employer for hire agreement with non-party Creative Impact Inc.



45. Creative Impact Inc. registered the BoB Packaging in the United States with the Register of Copyrights on May 7, 2019, and was assigned the registration number VA 2-149-747.

46. On August 18, 2021, Creative Impact Inc. assigned the rights to the BoB Packaging to non-party ZURU (Singapore) PTE, Ltd. by written agreement.

47. On July 1, 2025, ZURU (Singapore) PTE, Ltd. assigned the rights to the BoB Packaging to ZURU IP LIMITED by written agreement.

48. A true and accurate copy of the copyright registration certificate is shown in **Exhibit 2**.

49. At all relevant times, Plaintiff is the owner of all rights in and to the BoB Packaging at issue in this case, including the exclusive right to pursue acts of infringement and retain and recover all proceeds thereof.

50. The BoB Packaging is protected by copyright but is not otherwise confidential, proprietary, or trade secret.

## DEFENDANTS

51. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

52. Defendant Click Products LLC ("Click") is a New York limited liability company that conducts business in the State of New York. Click has a principal place of business at 157-05 Cross Island Parkway Whitestone, NY 11357 and can be served by serving its registered agent at the same address.

53. Defendant DUOCAI USA INC. ("DUOCAI") is a California corporation that conducts business in the State of New York. DUOCAI has a principal place of business at 2660

E 37th Street, Vernon, CA 90058 and can be served by serving its registered agent, Tung L WU, at 119 El Dorado Street, Unit #B, Arcadia, CA 91006.

54. Defendant MY SALES LLC ("My Sales") is registered as a foreign limited liability company in the State of New Jersey that conducts business in the State of New York. My Sales has a principal place of business at 75 Ethel Road, Edison, NJ 08817 and can be served by serving its registered agent, Jimmy Zhang, at the same address.

55. Defendant HUBEI PENGCHENG TECHNOLOGY FACTOR ("Hubei") is a Chinese Manufacturer and Trading Company with its principal place of business at No. 16, Industrial Zone, Xiaogan City, Hubei Province, China.

56. Upon information and belief, Defendant Hubei serves as a primary manufacturing source for Click, DOUCAI, and My Sales.

57. Defendants have registered, established or purchased, and maintained the Website.

58. Defendants target their business activities toward consumers throughout the United States, including within this district, through their operations via the Website.

59. Defendants are the past and present controlling forces behind the sale of products bearing or using counterfeits and infringements of Plaintiff's intellectual property rights as described herein operating and using at least the Website.

60. Defendants directly engage in unfair competition with Plaintiff by advertising, offering for sale, and selling goods bearing or using counterfeits and infringements of Plaintiff's intellectual property rights to consumers within the United States and this district through their Website.

61. Defendants have purposefully directed some portion of their illegal activities towards consumers in the state of New York through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing goods into the State.

62. Defendants, through the sale and offer to sell counterfeit and infringing products, are directly, and unfairly, competing with Plaintiff's economic interests in the state of New York and causing Plaintiff harm and damage within this jurisdiction.

63. The natural and intended byproduct of Defendants' actions is the erosion and destruction of the goodwill associated with Plaintiff's intellectual property rights and the destruction of the legitimate market sector in which it operates.

64. At all times relevant hereto, Defendants had actual or constructive knowledge of Plaintiff's intellectual property rights, including Plaintiff's exclusive right to use and license such intellectual property rights.

**DEFENDANTS' INFRINGING ACTIVITIES**

65. Defendants are promoting, advertising, distributing, selling, and/or offering for sale cheap copies of Plaintiff's products in interstate commerce that are counterfeits and infringements of Plaintiff's intellectual property rights (the "Counterfeit Goods") through their Website. A comparison of Plaintiff's genuine product and Defendants' infringing product is shown below:

**Plaintiff's Genuine Product** **Defendants' Infringing Product**

SELF-SEALING WATER BALLOONS

BUNCH O BALLOONS

FILL & TIE 100 WATER BALLOONS IN 60 SECONDS







"Self-sealing Water Balloons"

"FILL and TIE 111 Water Balloons in 60 Seconds!"

"Bunch O Balloons"

66. Defendants are using identical or similar marks to the BoB Marks, and/or identical or substantially similar copies of the BoB Packaging for different quality goods.

67. Plaintiff has used the BoB Marks and the BoB Packaging extensively and continuously before Defendants began offering counterfeit, infringing, and confusingly similar imitations of Plaintiff's merchandise.

68. Defendants' Counterfeit Goods are of a quality substantially different than that of Plaintiff's genuine goods.

69. Defendants are actively using, promoting and otherwise advertising, distributing, selling and/or offering for sale substantial quantities of Counterfeit Goods with the knowledge and intent that such products will be mistaken for the genuine high-quality products offered for sale by Plaintiff, despite Defendants' knowledge that they are without authority to use the BoB Marks and the BoB Packaging.

70. The net effect of Defendants' actions is likely to cause confusion of consumers, at the time of initial interest, sale, and in the post-sale setting, who will believe all Defendants'

products offered for sale on Defendants' e-commerce stores are genuine products originating from, associated with, and approved by Plaintiff.

71. Defendants advertise their Website, including their Counterfeit Goods offered for sale, to the consuming public.

72. In so advertising their Website, Defendants improperly and unlawfully use the BoB Marks and/or the BoB Packaging without Plaintiff's permission or authority as evidenced by the documents attached hereto as **Exhibit 3.**

73. As part of their overall infringement and counterfeiting scheme, Defendants are, upon information and belief, concurrently employing and benefitting from substantially similar, advertising and marketing strategies based, in large measure, upon an illegal use of counterfeits and infringements of the BoB Marks and the BoB Packaging.

74. Specifically, Defendants are using counterfeits and infringements of the BoB Marks and/or the BoB Packaging in order to make their Website selling illegal goods appear more relevant and attractive to consumers searching for both Plaintiff's goods and goods sold by Plaintiff's competitors online.

75. By their actions, Defendants are contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for Plaintiff's genuine goods.

76. Defendants are causing individual, concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of Plaintiff's genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill

associated with Plaintiff's business and intellectual property , and (iii) increasing Plaintiff's overall cost to market its goods and educate consumers via the Internet.

77. Defendants are concurrently conducting and targeting their counterfeiting and infringing activities toward consumers and likely causing unified harm within this district and elsewhere throughout the United States.

78. As a result, Defendants are defrauding Plaintiff and the consuming public for Defendants' own benefit.

79. At all times relevant hereto, Defendants in this action had actual or constructive knowledge of Plaintiff's trademarks and copyright , including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

80. Defendants' use of the BoB Marks and the BoB Packaging, including the promotion and advertisement, reproduction, distribution, sale and offering for sale of their Counterfeit Goods, is without Plaintiff's consent or authorization.

81. Defendants are engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiff's trademarks and copyright for the purpose of trading on Plaintiff's goodwill and reputation.

82. If Defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

83. Defendants' infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during and after the time of purchase.

84. Defendants' wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between Plaintiff's genuine goods and Defendants' Counterfeit Goods, which there is not.

85. Plaintiff is suffering irreparable injury and has suffered substantial damages as a result of Defendants' unauthorized and infringing activities and its wrongful use of Plaintiff's trademarks and copyright .

86. The harm and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods.

87. Defendants have sold their infringing products in competition directly with Plaintiff's genuine products.

88. Plaintiff should not have any competition from Defendants because Plaintiff never authorized Defendants to use Plaintiff's trademarks or copyright .

89. Plaintiff has no adequate remedy at law.

**COUNT I – TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)**

90. Plaintiff incorporates the allegations of paragraphs 1 through 89 of this Complaint as if fully set forth herein.

91. This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar marks to one or more of the BoB Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale and sale of the Counterfeit Goods.

92. Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and/or infringements of the BoB Marks.

93. Defendants are continuously infringing and inducing others to infringe the BoB Marks by using it to advertise, promote, sell, and offer to sell counterfeit and infringing goods.

94. Defendants' concurrent counterfeiting and infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

95. Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages to Plaintiff and are unjustly enriching Defendants with profits at Plaintiff's expense.

96. Defendants' above-described illegal actions constitute counterfeiting and infringement of the BoB Marks in violation of Defendants' rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

97. Plaintiff has suffered and will continue to suffer irreparable injury and damages due to Defendants' above-described activities if Defendants are not preliminarily and permanently enjoined.

98. If not preliminarily and permanently enjoined, Defendants will continue to wrongfully profit from their illegal activities.

**COUNT II – FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(A))**

99. Plaintiff incorporates the allegations of paragraphs 1 through 89 of this Complaint as if fully set forth herein.

100. Defendants' Counterfeit Goods bearing, offered for sale, and sold using copies of the BoB Marks have been widely advertised and offered for sale throughout the United States, including within this district.

101. Defendants' Counterfeit Goods bearing, offered for sale, and sold using copies of the BoB Marks are virtually identical in appearance to Plaintiff's genuine goods.

102. Defendants' Counterfeit Goods are different in quality from Plaintiff's goods and are of much lower quality.

103. Defendants' activities are likely to cause confusion in the trade and among the general public as to at least the origin or sponsorship of their Counterfeit Goods.

104. Defendants, upon information and belief, have used in connection with their advertisement, offer for sale, and sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and trade dress, which tend to falsely describe or represent such goods and have caused such goods to enter into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiff's detriment.

105. Defendants have authorized infringing uses of the BoB Marks in Defendants' advertisement and promotion of their counterfeit and infringing branded goods.

106. Defendants have misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-infringing goods.

107. Defendants are using infringements of the BoB Marks in order to unfairly compete with Plaintiff and others for space within organic search engine results and social media results, thereby jointly depriving Plaintiff of a valuable marketing and educational tool which would otherwise be available to Plaintiff and reducing the visibility of Plaintiff's genuine goods on the internet and across social media platforms.

108. Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

109. Plaintiff has no adequate remedy at law and has sustained indivisible injury and damage caused by Defendants' concurrent conduct.

110. Absent an entry of an injunction by this Court, Defendants will continue to wrongfully reap profits, and Plaintiff will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

## COUNT III – COMMON LAW TRADEMARK INFRINGEMENT

111. Plaintiff incorporates the allegations of paragraphs 1 through 89 of this Complaint as if fully set forth herein.

112. Plaintiff is the owner of all common law trademark rights in and to the BoB Marks.

113. Plaintiff was the first to use the BoB Marks.

114. Plaintiff has used the BUNCH O BALLOONS and BUNCHO Marks since August 30, 2014, the FILL & TIE 100 WATER BALLOONS IN 60 SECONDS Mark since January 15, 2015, and the SELF-SEALING WATER BALLOONS Mark since May 7, 2015.

115. As a result of Plaintiff's widespread and continuous use in commerce, including its promotion and sales of products bearing or using Plaintiff's BoB Marks, the BoB Marks have become widely known.

116. Defendants, with knowledge of and with the intentional disregard of Plaintiff's common law trademark rights, utilize the BoB Marks on and/or in conjunction with the sale of their counterfeit and infringing products. Defendants' infringing activities are likely to cause and, are actually causing, confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods bearing or using one or more of the BoB Marks.

117. Plaintiff has no adequate remedy at law and is suffering damages and irreparable injury as a result of Defendants' actions.

118. Absent an entry of an injunction by this Court, Defendants will continue to damage Plaintiff and wrongfully reap profits. Plaintiff will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

**COUNT IV – COMMON LAW UNFAIR COMPETITION**

119. Plaintiff incorporates the allegations of paragraphs 1 through 89 of this Complaint as if fully set forth herein.

120. Defendants' activities complained of herein constitute unfair methods of competition.

121. Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale and distributing goods using or bearing counterfeits and infringements of the BoB Marks and BoB Packaging .

122. Defendants are also using counterfeits and infringements of the BoB Marks and the BoB Packaging to unfairly compete with Plaintiff and others for (1) space in search engine and social media results across an array of search terms and (2) visibility on the Internet.

123. Defendants' infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Website and all products sold therein by their unauthorized use of the BoB Marks and the BoB Packaging .

124. Plaintiff has no adequate remedy at law and is suffering irreparable injury and damages as a result of Defendants' actions.

**COUNT V – COPYRIGHT INFRINGEMENT**

125. Plaintiff incorporates the allegations of paragraphs 1 through 89 of this Complaint as if fully set forth herein.

126. Plaintiff is the owner of a valid copyright in the BoB Packaging, at issue in this case.

127. Defendants copied, displayed, and distributed products with the BoB Packaging at issue in this case and made derivatives of the BoB Packaging without Plaintiff's authorization in violation of 17 U.S.C. § 501.

128. Defendants performed the acts alleged in the course and scope of its business activities.

129. On information and belief, Defendants routinely and intentionally infringe the intellectual property rights of others, including but not limited to, acting with willful blindness and/or reckless disregard.

130. Defendants' acts were willful.

131. Plaintiff has been damaged.

132. The harm caused is irreparable.

WHEREFORE, Plaintiff demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

a. Entry of preliminary and permanent injunctions pursuant to 15 U.S.C. § 1116, 17 U.S.C. §§ 502 and 503, and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from infringing, counterfeiting, or diluting the BoB Marks; from using the BoB Marks, or any mark or design similar thereto, in connection with the

sale of any unauthorized goods; from using any logo, trade name or trademark or design that may be calculated to falsely advertise the services or goods of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiff; from falsely representing themselves as being connected with Plaintiff, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants, are in any way endorsed by, approved by, and/or associated with Plaintiff; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of the BoB Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Plaintiff, or in any way endorsed by Plaintiff and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Plaintiff's name or trademark and from otherwise unfairly competing with Plaintiff; from copying, displaying, distributing or creating derivative works of Plaintiff's BoB Packaging .

b. Entry of an Order requiring Defendants to account to and pay Plaintiff for all profits and damages resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that

the award to Plaintiff be trebled, as provided for under 15 U.S.C. § 1117, or, at Plaintiff's election with respect to Count I, that Plaintiff be awarded statutory damages in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product sold, as provided by 15 U.S.C. § 1117(c)(2) of the Lanham Act.

c. Entry of an Order requiring Defendants to account to and pay Plaintiff for all profits and damages resulting from Defendants' copyright infringement and that Defendant be required to pay Plaintiff its actual damages and Defendants' profits attributable to the infringement, or, at Plaintiff's election, statutory damages, as provided in 17 U.S.C. § 504.

d. Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b), and 17 U.S.C. § 505, of Plaintiff's costs and reasonable attorneys' fees and investigative fees, associated with bringing this action, including the cost of corrective advertising.

e. Entry of an order authorizing seizure, impoundment and/or destruction of all of the products used to perpetrate the infringing acts pursuant to 17 U.S.C. § 503.

f. A determination that Defendants' infringement has been willful, wanton, and deliberate and that the damages against it be increased up to treble on this basis or for any other basis in accordance with the law.

g. Entry of an award of awarded pre- and post-judgment interest.

h. Entry of an Order for any such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: March 19, 2026

Respectfully submitted,

*/s/ Rachel I. Kaminetzky*
RACHEL I. KAMINETZKY
NY Bar Number: 6030647
Rachel.kaminetzky@sriplaw.com
JOEL B. ROTHMAN
NY Bar Number: 2459576
joel.rothman@sriplaw.com

**SRIPLAW, P.A.**
41 Madison Ave.
25th Floor
New York, NY 10010
561.404.4350 – Telephone
561.404.4353 – Facsimile

*Counsel for Plaintiff ZURU IP LIMITED*